IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO ADAME ARAUJO DE AGUILAR, et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>　　　　Defendants.<br>_____/<br>CLAUDIA MUNOZ, et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>　　　　Defendants.<br>_____/<br>ROSA ROMERO, et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>　　　　Defendants.<br>_____/ | CASE NO. CV-F-02-6527 REC LJO<br>**(Consolidated cases)**<br><br>**ORDER ON PLAINTIFFS' EX PARTE APPLICATION FOR ORDER TO REOPEN NONEXPERT DISCOVERY**<br>(Docs. 148, 149.) |

1

## INTRODUCTION

In this railroad crossing collision action, plaintiffs[1] seek to reopen discovery to depose two witnesses and to obtain documents regarding maintenance and repair of railroad crossing equipment and train at issue. For the reasons discussed below, this Court DENIES plaintiffs' ex parte application to reopen discovery for the requested depositions and document production.

## BACKGROUND

### Plaintiffs' Claims And This Court's Scheduling Order

On December 12, 2001, seven farm laborers were killed when their van collided with a defendant National Railroad Passenger Corporation ("Amtrack") train at a railroad crossing near Shafter, California. The plaintiffs are decedents' relatives and heirs and pursue negligence and wrongful death claims against several defendants to allege loss of decedents' support. Plaintiffs contend that Burlington Northern Sante Fe Corporation ("BNSF") is responsible to maintain and control the railroad tracks and crossing where decedent's van collided with the subject Amtrack train 7141-12. Plaintiffs believe crossing traffic control flashers "had a history of not always functioning at this crossing and at the time of the accident had malfunctioned and were not operating." Plaintiffs characterize as "principle issues" whether the warning systems at the crossing and on Amtrack train 7141-12 "were properly functioning at the time of the accident."

This Court consolidated the several actions of the numerous plaintiffs into the above-captioned action. This Court issued its September 30, 2004 order to set discovery, motion and trial dates. As to nonexpert discovery, the order states: "All nonexpert discovery and related discovery motions (including motions to compel) shall be completed or heard no later than **June 10, 2005**." (Bold in original.) The order further set a July 15, 2005 expert discovery cutoff, a September 15, 2005 pretrial conference and a November 1, 2005 trial.

### Plaintiff's Late Discovery

On April 28, 2005, plaintiff Rocio Adame Araujo served a notice on BNSF for its F.R.Civ.P.

---

[1] The plaintiffs seeking the ex parte relief are Rocio Adame Alfaro, Lizebeth Aguilar Adame, Claudia Munoz, Luis Mario Munoz, Isais Sarabia, Paola Diaz Sarabia, Juan Jimenez, Maria Guadalupe Jimenez Diaz, Pedro Jimenez Diaz, Rocio Jimenez Diaz, and Valeria Itzel Jimenez Diaz. Counsel for these defendants indicates the motion "is made on behalf of all plaintiffs in the present action."

30(a)(1) person most knowledgeable regarding the maintenance and repair of the traffic control device at the crossing where the collision occurred. The deposition notice sought production of all documents regarding maintenance and report of the traffic control device. In response, BNSF produced its employee David Greenlee ("Mr. Greenlee"), who was deposed on June 27, 2005.[2] Plaintiffs are critical of BNSF's selection of Mr. Greenlee as person most knowledgeable and claim:

1. Mr. Greenlee is not the person most knowledgeable regarding the traffic control device and key information downloaded from the control box at the railroad crossing;

2. Mr. Greenlee created doubt whether "BNSF followed proper procedures with regard to opening the control box following the accident";

3. Mr. Greenlee was not trained to interpret key information that was downloaded on the control box after the collision; and

4. Kenneth Walter ("Mr. Walter"), BNSF supervisor of signals, "is the person most knowledgeable as to critical data that was recorded and downloaded from the control box located at the railroad crossing," and Mr. Walter's deposition can cure Mr. Greenlee's inconsistencies.

Walter Ward ("Mr. Ward") was the engineer of Amtrack train 7141-12 at the time of the collision and was deposed on June 30, 2005.[3] Patricia Miller ("Ms. Miller") was the second engineer at the time of the collision. Plaintiffs attribute Mr. Ward as testifying that:

1. When Mr. Ward was on the ground, ditch lights on the train were not lit although their switch was on and he so indicated on a work order; and

2. Mr. Ward "did not mention the malfunction in the accident report and the accident report states that he believed the ditch lights were on."

**Plaintiffs' Ex Parte Application**

On August 8, 2005, plaintiffs filed their ex parte application to reopen discovery to depose Mr. Walter and Ms. Miller and to seek production of "all written, digital or electronic records of all repairs

---

[2] Plaintiffs fail to explain why Mr. Greenlee was deposed after the June 10, 2005 nonexpert discovery cutoff.

[3] Plaintiffs fail to explain why Mr. Ward was deposed after the June 10, 2005 nonexpert discovery cutoff.

made to and at the railroad signal control box at the location of the accident" and "all work orders for Amtrak train #7141-12."  Plaintiffs contend that:

1. Mr. Walter's deposition is required to resolve Mr. Greenlee's inconsistencies and to provide requested person most knowledgeable information;

2. Mr. Walter's deposition "would potentially provide critical information with regard to the control box and whether the warning device system at the railroad crossing was functioning properly";

3. Since Mr. Walter "made electronic changes to the data at the control box" at the crossing, plaintiffs require discovery of all railroad repair orders;

4. Ms. Miller's deposition "may provide valuable information regarding the condition of the ditch lights following the accident";

5. Ms. Miller's testimony and the work order documents may reconcile Mr. Ward's testimony;

6. Based on Mr. Ward's testimony regarding the train's ditch lights, plaintiffs need production of all work orders regarding the train; and

7. The requested discovery could be "potentially effective" to plaintiffs' case.

According to plaintiffs, defense counsel at the conclusion of Mr. Greenlee's June 27, 2005 deposition and Mr. Ward's June 30, 2005 deposition declined plaintiffs' requests to reopen discovery.

### DISCUSSION

#### Reopening Discovery

Pursuant to F.R.Civ.P. 16(b)(2) and (3), district courts must enter scheduling orders to establish deadlines for, among other things, "to file motions" and "to complete discovery."  Scheduling orders may also include "the date or dates for conferences before trial, a final pretrial conference, and trial." F.R.Civ.P. 16(b)(4).  "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."  F.R.Civ.P. 16(b). The scheduling order "shall control the subsequent course of the action unless modified by a subsequent order."  F.R.Civ.P. 16(e).

Scheduling orders "are the heart of case management," *Koplve v. Ford Motor Co.*, 795 F.2d 15,

18 (3rd Cir. 1986), and are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610. In *Johnson*, 975 F.2d at 609, the Ninth Circuit Court of Appeals explained:

> . . . Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment) . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

Parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995). In addressing the diligence requirement, this Court has noted:

> Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, *see In re San Juan Dupont*, 111 F.3d at 228; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, *see Johnson*, 975 F.2d at 609; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, *see Eckert Cold Storage*, 943 F.Supp. at 1233.

*Jackson*, 186 F.R.D. at 608.

In the case at hand, plaintiffs with their ex parte application unilaterally seek to reopen nonexpert discovery which by this Court's order has been closed for nearly two months.[4] Plaintiffs show neither defendants nor this Court the courtesy to comply with Local Rule 6-142(e) to seek an order to shorten time to permit defendants to respond to plaintiffs' ex parte application. Plaintiffs' procedural miscues and failure to properly seek their requested relief add to the reasons discussed below to deny them to reopen discovery.

Plaintiffs meekly claim they have good cause to reopen discovery. Plaintiffs show no good cause to reopen discovery which they characterize as "potentially effective" to their case. Plaintiffs provide no meaningful information which may be unearthed from reopening discovery.

---

[4] In their papers, plaintiffs fail to mention the June 10, 2005 nonexpert discovery cutoff and merely refer to the November 1, 2005 trial.

More troubling is plaintiffs' lack of diligence. For unexplained reasons, the depositions giving rise for the need to reopen discovery were taken **after** this Court's ordered discovery cutoff. To reopen discovery, plaintiffs rely on discovery conducted after the nonexpert discovery cutoff. Plaintiffs delayed deposing key witnesses perhaps on the gamble that settlement would avoid the need for the depositions. Plaintiffs characterize as "principle issues" the proper operation of warning systems to demonstrate the need to conduct earlier discovery on these key matters. Plaintiffs show no diligence to reopen discovery, especially given the two-month expiration of the nonexpert discovery cutoff.

Whatever its reason, plaintiffs' delay is akin to carelessness to eviscerate necessary diligence for their requested relief. Moreover, plaintiffs participated in a September 30, 2004 scheduling conference to set the discovery dates. Plaintiffs offer no evidence that despite diligence, of which none is shown, they could not have reasonably foreseen an inability to complete discovery which they now seek. Equally damaging to plaintiffs is their delay to seek relief five weeks after defense counsel declined to reopen discovery. Reopening discovery would render the scheduling order frivolous.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES plaintiffs' ex parte application to reopen discovery.

IT IS SO ORDERED.

**Dated:   August 9, 2005**             /s/ Lawrence J. O'Neill
66h44d                              UNITED STATES MAGISTRATE JUDGE