IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO ADAME ARAUJO DE AGUILAR, et al., <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION, et al., <br><br> Defendant. | No. CV-F-02-6527 REC/LJO <br><br> ORDER GRANTING DEFENDANT COUNTY OF KERN'S MOTION FOR SUMMARY JUDGMENT (Doc. 109) |

On October 11, 2005, the court heard defendant County of Kern's motion for summary judgment.

Upon due consideration of the record and the arguments of the parties, the court grants the County's motion for the reasons set forth herein.[1]

---

[1] In resolving this motion, the court reviewed and considered all of the evidence submitted by the parties with two exceptions. The court did not consider the County's evidence that the occupants of the van had alcohol in their bloodstreams because the evidence submitted did not establish that the driver of the van had alcohol in his bloodstream, a fact the County conceded at oral argument.

1

This consolidated action involves complaints filed in five separate cases by the heirs of seven persons killed by a collision with an Amtrak train where the train tracks cross Poplar Avenue near Shafter, California.  The County of Kern is named as a defendant by the plaintiffs in <u>Rocio Adame Alfaro, et al. v. National Railroad Passenger Corporation, et al.</u>, No. CV-F-03-5632 REC/LJO and in <u>Ester Aguilar v. National Railroad Passenger Corporation, et al.</u>, No. CV-F-03-5633 REC/LJO.

The County is moving for summary judgment against those plaintiffs who have sued it for damages on the ground that the County maintained a dangerous condition of public property that caused the deaths of plaintiffs' decedents.  The County contends that it is entitled to summary judgment because the accident occurred on property that was not owned or controlled by the County; that the County's property was not in a dangerous condition; and/or that, if the property was in a dangerous condition, the County did not receive notice of it in time to correct the condition before the collision.

**A.  <u>County's Liability under California Government Code § 835</u>.**

　　**1.  <u>Governing Standards</u>.**

California Government Code § 835 provides in pertinent part:

---

The court also did not consider evidence that the driver, Mario Aguilar, had had his license suspended twice for drunk driving and was driving on a suspended license at the time of the accident. <u>See</u> California Vehicle Code § 40832; <u>Shmatovich v. New Sonoma Creamery</u>, 187 Cal.App.2d 342 (1960).

2

> Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and ...:
>
> ...
>
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Government Code § 835.2(a) provides that a public entity has actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." Section 835.2(b) provides in pertinent part that constructive notice exists

> only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

### a. **Ownership or Control of Dangerous Condition of Property**.

The County moves for summary judgment on the ground that it did not own or control the railroad crossing of Poplar Avenue where the accident occurred.

In their opposition brief, plaintiffs do not argue that the County owned or controlled the railroad crossing. Rather,

plaintiffs contend that there is a genuine issue of material fact that the southbound approach of Poplar Avenue to the railroad crossing is property owned and controlled by the County and that this approach to the railroad crossing is the dangerous condition of which plaintiffs complain.

There can be no dispute that the County owned and controlled Poplar Avenue to within two feet of the actual railroad crossing. Consequently, the issue is whether Poplar Avenue was a dangerous condition.

### b. **Dangerous Condition**.

A "dangerous condition" of public property means a condition of the property that creates a substantial (as distinguished from a minor, trivial or insignificant risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used. Antenor v. City of Los Angeles, 174 Cal.App.3d 477, 482-483 (1985). Whether a given set of circumstances creates a dangerous condition is primarily a question of fact and may be resolved as a question of law only if reasonable minds can come to but one conclusion. Harland v. State of California, 75 Cal.App.3d 475, 484 (1977).

Plaintiffs argue that the configuration of southbound Poplar Avenue such that it intersects the railroad crossing at an oblique 45-degree angle creates a dangerous condition for motorists approaching the railroad crossing from the south. Plaintiffs refer to the declarations of their retained experts that a motorist arriving at the limit line north of the railroad

4

crossing has a limited view of the railroad tracks to the motorist's right and has to turn his or her head approximately 135 degrees to see an approaching southeast bound train. Relying on this evidence, plaintiffs argue:

> The placement of the stop/limit line on the pavement to the north of the tracks puts the motorist in a position where he is physically prevented from having clear view of on-coming southeast-bound train traffic. The angle of the intersection works against safety, making it difficult to locate traffic control devices so that they can be effectively seen. As a result, the configuration of the County's roadway at the intersection constituted a dangerous condition of public property.

However, as the County argues, the record submitted to the court, particularly the photographic evidence, establishes that the view of the railroad tracks to the northwest from the limit line for a southbound motorist is unobstructed to the horizon. In addition, the southbound motorist's view of the railroad crossing from Poplar Avenue is unobstructed. From 1,000 to 1,500 feet north of the railroad crossing, a southbound motorist approaching the railroad crossing had an unobstructed view of the train tracks to the northwest. Southbound Poplar Avenue is clearly marked and signed for the approaching railroad crossing and is marked and signed in compliance with law. A southbound motorist had a unobstructed view of 480 feet of the train tracks to the northwest from 340 feet south of the railroad crossing. The railroad crossing itself has a train-actuated flashing signal device. Therefore, notwithstanding the opinions of plaintiff's

experts, the court concludes as a matter of law that the configuration of Poplar Avenue was not a dangerous condition within the meaning of the statute.  The evidence before the court establishes that a southbound motorist was adequately warned by signage and pavement markings of the approaching railroad crossing and that the view from the limitline of the tracks to the northwest is unobstructed.  The fact that the motorist has to turn his head further to the right to see a train approaching from the northwest than he would have to do at a 90-degree angle crossing does not negate these facts.  Requiring a driver to turn his head to see if a train is approaching does not create a dangerous condition.  See Balding v. Atchison, Topeka & Santa Fe Railway, 225 Cal.App.2d 254, 259-260 (1964), quoting Will v. Southern Pacific Co., 18 Cal.2d 468, 474-475 (1941). Furthermore, the evidence establishes that Mario Aguilar stopped or came to a near stop before crossing the railroad tracks, thereby establishing that he was aware of the railroad crossing before he passed the limit line.

        **c.  Injury Proximately Caused by Dangerous Condition**.

Assuming for purposes of argument that the configuration of Poplar Avenue is a dangerous condition, plaintiffs that summary judgment should be denied because it is undisputed that the condition proximately caused the accident.  In so contending, plaintiffs that Mario Aguilar either stopped his vehicle or came to a near stop as he approached the railroad crossing and then

6

pulled into the path of the train.  Plaintiffs contend: "A very reasonable inference exists that the driver of the van had no warning of the train and did not see the train as a result of the configuration of the road."

Because the court concludes that the configuration of Poplar Avenue was not a dangerous condition, the court need not address plaintiffs' position.  However, the record before the court is disputed whether the train's warning horn was sounding and whether the train-actuated signal device was operating at the time of the accident.  These factual disputes do not raise a genuine issue of material fact regarding the County's liability because the record establishes as a matter of law and fact that the County has no ownership or control over these devices.  However, if the court had concluded that the configuration of Poplar Avenue raises a question of fact regarding whether it is a dangerous condition, the court would further conclude that the County is not entitled to summary judgment on the issue of proximate causation.

         **d.**   **Reasonably Foreseeable Risk of Kind of Injury That Occurred**.

Assuming that the configuration of Poplar Avenue is a dangerous condition, plaintiffs argue that the County is not entitled to summary judgment with regard to this element of liability.  Plaintiffs contend that the configuration of southbound Poplar Avenue as it crossed the railroad tracks created a risk that a motorist would not see a train approaching

1  from the northwest, would enter the railroad crossing in front of
2  the train, be struck by the train and suffer injuries or death.
3  Plaintiffs argue that the fact that third party negligence is a
4  concurring proximate cause of the injury does not preclude
5  liability of the County for the dangerous condition of Poplar
6  Avenue, provided that the kind of injury that occurred was
7  reasonably foreseeable.

8  　　　In making this latter argument, the court assumes that
9  plaintiffs are referring to the possible negligence of Mario
10 Aguilar and/or the railroad.  In this regard, plaintiffs'
11 position is a correct statement of the law.  Liability for a
12 dangerous condition of property cannot be premised upon third
13 party conduct alone.  <u>Peterson v. San Francisco Community College
14 Dist.</u>, 36 Cal.3d 799, 810 (1984).  Such liability may arise only
15 where third party conduct is coupled with a dangerous condition
16 of the property.  <u>Id</u>.

17 　　　Because the court has concluded that the configuration of
18 Poplar Avenue is not a dangerous condition, the court need not
19 address plaintiffs' position.  However, if the court had
20 concluded that the configuration of Poplar Avenue raises a
21 question of fact regarding whether it is a dangerous condition,
22 the court would conclude that the County is not entitled to
23 summary judgment on the issue of reasonably foreseeable risk.

24 　　　　　　**e.  County's Actual or Constructive Knowledge of**
25 **Dangerous Condition**.

26 　　　Assuming that the configuration of Poplar Avenue is a

8

dangerous condition, plaintiffs argue that the County is not entitled to summary judgment with respect to this element because the County had actual or constructive notice of the dangerous condition.

Government Code § 835.2(a) provides that a public entity has actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." Section 835.2(b) provides in pertinent part that constructive notice exists

> only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

In so arguing, plaintiffs refer to the records of accidents at the Poplar Avenue railroad crossing maintained by the County. Plaintiffs contend that the County had notice of eleven accidents at the railroad crossing before the accident at issue.

Because the court concludes that the configuration of Poplar Avenue is not a dangerous condition, the court need not address plaintiffs' position. However, if the court had concluded that the configuration of Poplar Avenue is a dangerous condition, the court would grant summary judgment for the County on this issue.

As the County argues, the evidence establishes that only three accidents prior to the one at issue involved a vehicle traveling southbound on Poplar Avenue. One of the three accidents occurred in 1965 before the train-actuated signal

9

device was installed.  Furthermore, the CHP investigating officer noted that visibility was good for the driver of the vehicle and that the investigating officer discussed bringing criminal charges against the driver because the driver was the cause of the accident.  The second accident involving a southbound vehicle occurred in 1975.[2]  The driver in a commercial truck pulling a trailer filled with cotton seed drove the truck and most of the trailer over the railroad tracks.  The report states that the driver failed to notice the train and that the train signals were working at the time of the investigation.  The third accident involving a vehicle southbound on Poplar Avenue occurred in 1997. According to the accident report, the driver of the vehicle was slowing as he approached the railroad crossing.  The driver of the southbound vehicle drove into the side of the train which already in the intersection at the time of the collision, striking the second engine.  The occupants of the vehicle fled the scene prior to the investigation.  None of the accident reports prepared by the CHP attribute the cause of the accident to the angle at which southbound Poplar Avenue crosses the railroad tracks.  As the County argues, these three accidents as detailed in the CHP accident reports did not suffice to give the County actual notice that the configuration of Poplar Avenue was a dangerous condition.  The first accident occurred 36 years

---

[2] It is noted that the accident report actually states that the driver of the vehicle was traveling west on Poplar Avenue - which is impossible.  However, from the drawing of the accident on the report, the driver was southbound on Poplar Avenue.

before the accident at issue and occurred before the train-actuated signal device was installed.  The second accident occurred ten years later and was not caused by the configuration of Poplar Avenue but because the driver failed to pull the trailer off the tracks before the train arrived.  In the third accident, the driver actually drove into the side of the train and then fled the scene, thereby negating any conclusion that the driver failed to see the train because of the configuration of Poplar Avenue.

Plaintiffs further argue that the County had actual knowledge of the dangerous condition caused by the configuration of Poplar Avenue as it crossed the railroad tracks because the County regularly inspected its roads every two weeks, which inspections included line-of-sight dangers where roads crossed railroad tracks.

However, in the absence of any indication that any of these inspections caused the County to consider the Poplar Avenue crossing dangerous because of the configuration of the road as it approached and crossed the tracks in a southbound direction, the fact of inspections is not probative that the County had actual knowledge of a dangerous condition.

Plaintiffs further contend that the County had actual notice because of the evidence from plaintiffs' experts that accidents at the location far exceeded the statistical norm for such an intersection.  Plaintiffs refer to the Federal Railroad Administration Predicted Accident Formula as predicting that this

1  railroad crossing would have an accident history of one crash
2  every 9.5 years.  Because, plaintiffs argue, the evidence
3  establishes that there were 11 accidents at the railroad crossing
4  before the accident at issue, the County had actual knowledge of
5  the dangerous condition.

6     However, plaintiffs base the dangerous condition as the
7  configuration of Poplar Avenue as it approached the railroad
8  crossing from the south.  Consequently, as the County argues, the
9  accidents that are relevant to plaintiffs' case are those
10 accidents involving a collision by a southbound vehicle with a
11 southeast bound train.  As noted, only three such collisions
12 occurred and the circumstances of all of those collisions differ
13 from that involving the accident before the court.  In addition,
14 the County notes that plaintiffs' experts assert that Poplar
15 Avenue had an average daily traffic of 510 vehicles in 1991,
16 meaning that approximately 186,150 cars crossed the railroad
17 tracks annually.  As the County contends:

> If projected over the 35 years that the train
> actuated warning devices were in place, this
> means (after subtracting out the eight cars
> involved in accidents) that 6,515,242 million
> cars traveled over the railroad crossing
> without incident.  The suggestion that eight
> accidents (even though six do not apply to
> the current circumstances) out of more than
> 6.5 million vehicles traveling over the
> railroad tracks, should have placed the
> County on notice of a dangerous condition is
> ludicrous.

See Callahan v. City and County of San Francisco, 15 Cal.App.3d
374, 379 (1971):

12

> We have concluded that the summary proceedings have clearly eliminated the issue of negligence of the City in either permitting a dangerous condition to exist or of any negligent maintenance. It has shown that despite a heavy volume of daily automobile traffic, no other such accident had occurred over a period of four and one-half years. ....
>
> The statistics of vehicle traffic at the intersection ... show that in excess of 19 million vehicles traversed the intersection during a period of four and one-half years prior to the accident. The paucity of accidents occurring during this time clearly indicates that the intersection was a safe one except for drivers described by the witness here, i.e., 'maniacal' or driving at excessive and hazardous speed.

Plaintiffs further argue that summary judgment for the County is not appropriate because of evidence from which it may be inferred that the County had constructive notice of the dangerous condition to southbound traffic on Poplar Avenue crossing the railroad tracks.

In so contending, plaintiffs refer to the evidence that the County applied to the PUC for a gate crossing at the intersection in 1987 through 1997.

Although the County concedes that it applied to the PUC for the gate crossing, the County notes that it applied to the PUC for such gate crossings at every railroad crossing in the County which did not already have one. Consequently, as the County contends, the fact of the PUC applications does not permit the inference that the County applied for the gate crossing at the subject intersection because it had notice of the dangerous

13

configuration of southbound Poplar Avenue with respect to southeast bound trains at the railroad crossing.  Given the annual volume of traffic crossing the railroad tracks on Poplar Avenue, the low number of accidents occurring between trains and motorists southbound on Poplar Avenue and the fact that the circumstances of only one of those accidents is similar to that before the court, which accident occurred prior to the installation of the train-actuated signal device, and the evidence that the County applied for crossing gates on all railroad crossings in the County which did not have them, the County is entitled to summary judgment that it did not have actual or constructive knowledge that the configuration of southbound Poplar Avenue as it crossed the railroad tracks was a dangerous condition, assuming solely for purposes of resolution of this aspect of the motion that it constituted a dangerous condition.

### f. **Dangerous Railroad Crossing**.

Plaintiffs' further argue that summary judgment for the County should be denied because "[t]he dangerous railroad crossing immediately adjacent to the County's roadway exposed motorists using Poplar Avenue to a substantial risk of injury." Plaintiffs contend that "[p]ublic entity liability may also arise under section 835 of the Government Code if a condition on adjacent property exposes those using the public property to a substantial risk of injury."

Plaintiffs' position does not suffice to withstand summary

14

judgment on this ground.

In so contending, plaintiffs place primary reliance on <u>Shea v. City of San Bernardino</u>, 7 Cal.2d 688 (1936). In <u>Shea</u>, the plaintiff was injured when the car in which she was riding as a passenger, traveling on a city street at normal speed, hit a bad bump at the railroad crossing. Affirming judgment for the plaintiff, the Supreme Court held:

> ... In giving consideration to appellant's contention that the city was powerless to remedy the defect the above-mentioned hypothesis will be assumed to be correct. Nevertheless, the contention is not impressive. It must be remembered that the improvement of streets within the boundaries of a city is an affair in which the city is vitally interested. The governing board and officers of the municipality in dealing with such an affair may not complacently declare that they were powerless over a long period of years to take any steps to remedy a defective and dangerous condition that existed in one of the principal streets of the city. If the railroad commission had the exclusive jurisdiction to order the north track to be lowered it was the duty of the city at some time during the six year period to call upon the railroad commission to order the rail to be lowered and thus to remove an obviously dangerous condition in the street. Finally, if it be assumed that the city was entirely powerless in the premises, had not control over the right of way, and was entitled, so far as the condition which existed at the right of way was concerned, to rely on the lack of power and control to relieve it from liability, it was nevertheless not relieved from the duty to warn persons lawfully using the street that a dangerous condition existed.

7 Cal.2d at 693.

Plaintiffs argue that, because the County had unsuccessfully

1  applied to the PUC for a gate crossing at the Poplar Avenue
2  railroad crossing, the County could have closed Poplar Avenue at
3  the railroad crossing or re-aligned Poplar Avenue to cross the
4  railroad tracks at a 90-degree angle instead of sitting "idly by
5  as the motorist continued to traverse the dangerous railroad
6  crossing."

7       Here, however, the southbound motorist was warned of the
8  railroad crossing by lawful signage and road markings.  Thus, the
9  court is not faced with a situation in which no warning of the
10 upcoming railroad crossing was given to the motorist.  As the
11 County argues, the duty to warn arises only when the condition is
12 not reasonably apparent to those using the road.  See Bunker v.
13 City of Glendale, 111 Calliope.3d 325, 328 (1980).  Plaintiffs'
14 contention that the configuration of southbound Poplar Avenue
15 constituted a trap suggests that the angle of the road was not
16 reasonably apparent to a driver.  However, as the County
17 contends, this argument "fails due to its own internal logic."
18 First, the fact that Aguilar stopped or nearly stopped before
19 crossing tracks establishes that he was aware of the railroad
20 crossing.  Consequently, the County's signs and pavement markings
21 warning of the railroad crossing were successful.  Furthermore,
22 the angle at which southbound Poplar Avenue crossed the railroad
23 tracks would have been reasonably apparent to the southbound
24 motorist as demonstrated by photographs of the scene.  And as
25 noted above, the view from the limit line of the tracks to the
26 northwest is unobstructed.  Thus, the direction and location of

16

the railroad tracks were apparent such that no further warning was needed.  Furthermore, as the County argues, its ability to warn is limited to informing the driver of the existence of the railroad crossing:

> Signs and pavement markings are static and are incapable of notifying a driver of the changing situation of a train being present.  Thus, the duty of warning of the presence of a train is placed upon the railroad who has the knowledge as to whether a train is present.  In turn, the railroad uses the devices authorized for each unique crossing by the Public Utilities Commission for that purpose.

Finally, the County had no authority to close or realign Poplar Avenue at the railroad crossing.  The County's authority to close a road is limited by California Streets and Highway Code § 8324, which pertains to hearings in connection with applications to vacate roadways and easements and provides in pertinent part:

> (b) If the legislative body finds, from all the evidence submitted, that the street, highway, or public service easement described in the notice of hearing or petition is unnecessary for present or prospective public use, the legislative body may adopt a resolution vacating the street, highway, or public service easement.  The resolution of vacation may provide that the vacation occurs only after the conditions required by the legislative body have been satisfied and may instruct the clerk that the resolution of vacation not be recorded until the conditions have been satisfied.

Therefore, the County could not have closed Poplar Avenue absent a finding that Poplar Avenue is "unnecessary to present or prospective public use."  The plaintiffs' contention that Poplar

17

Avenue could be closed without inconvenience to the public is without evidentiary support.  Furthermore, the PUC has the exclusive power pursuant to California Public Utilities Code Section 1202

> (a) To determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use, and protection of each crossing ... of a public or publicly used road or highway by a railroad ... and of a street by a railroad or of a railroad by a street.
>
> (b) To alter, relocate, or abolish by physical closing any crossing set forth in subdivision (a).

See also California Streets and Highways Code § 120 ("With the consent and approval of the Public Utilities Commission, the department may abandon that portion of any state highway which crosses the tracks or right of way of any railroad or street railroad, and may close such crossing.") Therefore, as the County argues, the suggestion that the County could vacate Poplar Avenue and, with vacation, abolish the railroad crossing, is contrary to law.

ACCORDINGLY:

1.  Defendant County of Kern's motion for summary judgment is granted.

IT IS SO ORDERED.

**Dated:  December 29, 2005**                     **/s/ Robert E. Coyle**
668554                                            UNITED STATES DISTRICT JUDGE

18